(52 South. 176.)

No. 17,769.

WHITNEY v. PARISH OF VERNON.

(March 28, 1910. Rehearing Denied April 25, 1910.)

*(Syllabus by the Court.)*

1. PARISHES—CONTRACTS.

Where a police jury passes an ordinance for the erection of a courthouse and provides that the payment for the same shall be made in installments, no member or officer of the police jury has a right to change the contract so as to discharge the contract by a cash payment. The sole authority for the contract is the ordinance of the police jury, and the contract sought to be made cannot go beyond its terms, and, when it does, the contract is null, as it is not within the power of a building committee to set aside a plain provision of the lawmaking body.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 113.*]

2. PARISHES — CONTRACTS — WARRANTS — ESTOPPEL.

A contract for the building of a parish courthouse may provide for its payment in cash, or from funds to be realized from certificates. Murphy v. St. Mary, 118 La. 401, 42 South. 979; Dupuy Case, 116 La. 785, 41 South. 91; Bienville Parish Case, 48 La. Ann. 333, 19 South. 282. No warrant can be issued unless sufficient funds have been laid aside to meet it, and plaintiff must have known, when the committee provided for a cash payment, that they had exceeded their authority, since no revenues had been laid aside to meet the payment, and no provisions made to raise the funds. He must be held to a knowledge that the second ordinance, which provided for levying a three-mill tax, was void, and it is well settled that the parish cannot be estopped and concluded by this ordinance.

[Ed. Note.—For other cases, see Counties, Dec. Dig. §§ 124, 152, 164.*]

3. PARISHES—POWERS OF POLICE JURY—RATIFICATION OF VOID ORDINANCE.

A police jury possesses only delegated powers, defined by statutes, and are not free to act as individuals, and it is not within the scope of their authority to ratify that which originally had no existence, such as a void contract. Therefore the second ordinance did not have the effect of giving vitality to the first.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 185; Dec. Dig. §§ 47, 124.*]

4. DAMAGES (§§ 30, 40*)—REPUTATION—PROFITS FROM CONTRACT.

Where one claims damages, and the evidence shows merely a difference of opinion as to a contract, this is not sufficient to sustain a judgment for damages to one's reputation. As regards the profits which would have been made by the plaintiff, a judgment in a round sum in favor of the plaintiff will be awarded only where the facts show that it is reasonably certain that he would have realized the amount claimed.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 72–88; Dec. Dig. §§ 30, 40.*]

5. JUDGMENT MODIFIED AND AFFIRMED.

Judgment in favor of plaintiff in reconvention reduced, with interest on that amount, as

heretofore allowed, and judgment otherwise affirmed.

Monroe, J., dissenting.

Appeal from Twelfth Judicial District Court, Parish of Vernon; Don E. So. Relle, Judge.

Action by William C. Whitney against the Parish of Vernon. Judgment for defendant, and plaintiff appeals. Affirmed.

Palmer & Williamson and Pujo, Moss & Sugar, for appellant. Sidney I. Foster and Ponder & Ponder, for appellee.

BREAUX, C. J. Plaintiff brought this suit against defendant for defendant's alleged breach of contract, and asked for judgment in the sum of $12,692.19 actual damages, and $17,150.24 profits' loss on the contract; and he claims, in addition, $15,000 as damages to his reputation.

He entered into a contract with the parish of Vernon on the 4th day of May, 1908, to provide material and build the courthouse as per plan and specifications. He claims that he was to have all of the materials in the old courthouse building.

The amount originally agreed upon to build the courthouse was $88,000.

Some time after the contract had been entered into, an additional amount of $2,121.70 was agreed upon to be paid for an asserted change in the foundation of the building.

There was some delay before he began to do the work, which occurred, as he represents, on the request of defendant. He began the work on the 7th day of March, 1907.

Plaintiff states that on the 10th day of August, 1908, without cause, the police jury adopted an ordinance declaring the contract in question an absolute nullity.

The defendant, on the other hand, denied all indebtedness to plaintiff, and averred that the contract was a nullity from the first.

Defendant claimed $6,000 for materials taken from the old courthouse to erect the jail, which plaintiff had contracted to build at the same time that he contracted to build the courthouse.

The defendant charged the plaintiff and the architect with fraud and collusion to the amount of about $1,000 in matter of the jail, and charges that plaintiff and this architect were preparing to defraud the parish in matter of the contract to build the courthouse.

The defendant claimed an amount of $6,000 in reconvention, to wit, $1,000 paid by the parish in error brought about, defendant alleged, by false representations of the plaintiff, and $5,000 for materials belonging to the defendant used by plaintiff, to which he had no right.

At defendant's instance, a writ of sequestration was issued, and the material which the plaintiff was removing was seized.

The judge of the district court rejected plaintiff's demand and gave defendant judgment in reconventional demand for $10,000 instead of $6,000, prayed for.

There was patent error, as relates to $4,000, owing to an oversight of the court, as the defendant had only asked for $6,000 in reconvention.

The defendant entered a remittitur for said amount.

The police jury adopted an ordinance regularly on the 5th day of August, 1907, and made provisions for erecting a courthouse. The ordinance contained all that was essential. In addition, specifications were adopted and plans prepared. An architect was selected, and a superintendent of the work employed.

Plaintiff was awarded the contract which the ordinance authorized to be made.

The police jury directed its president to sign the contract in accordance with the ordinance.

He departed from the terms and conditions of the ordinance and contracted on a cash

basis, not provided for in the ordinance, instead of a contract on a credit basis, as had been ordained by the police jury.

The ordinance in question provided for paying the contractor and builder in 10 equal installments, represented by 10 certificates of indebtedness, which were to be delivered over to the contractor.

The president did not choose to follow this provision of the ordinance. Instead of contracting to pay for the building in 10 years, as authorized by the ordinance, the contract stipulated that the payment would have to be made in about one year; that is, about the time it would take to complete the building.

We will here state, in a transaction involving the payment of a large amount even between private individuals, the terms of payment are of importance.

In a private transaction, if a person directs an agent to enter into a contract, the consideration for which is to be paid in 10 years, the agent would be greatly at fault if he sought to bind his principal to pay in a shorter time.

The contractor began work on the building when the police jury awakened to the necessity of finding the cash necessary to pay the whole amount due without awaiting the delay provided for in the ordinance. They took steps to find a lender. No one could be found to make the loan on a cash contract, to which we have referred, based on a credit ordinance.

Financiers generally have some idea of the congruity. They evidently were not attracted by a credit ordinance and a cash contract based thereon. The result was that there was an absolute failure on the part of the police jury to find the money. The police jury did not have it, and there were no prospects in the future to realize an amount sufficient.

The police jury, in addition to the ordinance to which we have referred, sought to obtain the amount by an ordinance setting aside a three mills' tax to pay the contractor.

The terms were changed from 10 to 4 years within which the parish would pay the amount.

This also signally failed.

The police jury, about the same time, sought to make it appear that the intention in adopting the credit ordinance was to adopt a cash ordinance.

This expression of the intention at the time that the ordinance was drawn could not prevail against the plain expressions of the ordinance providing for credit payments in equal installments in 10 years' time. The terms of the ordinance were too plain to admit of an intention to the contrary on the part of those by whom it was adopted.

This attempted interpretation of the ordinance influenced no one; no one would lend money to the parish.

The ordinance could not be changed by subsequent declaration.

We have before stated that there was some delay. During that delay, differences arose between the contractor and those in charge of the parish interests.

The officers of the parish and others, looking on while the foundation of the building was being laid, were not favorably impressed. There were complaints.

There was an election for police jurors held about that time, and new and different members of the police jury were elected.

It afforded an opportunity to the defense in argument on the trial to argue that the change in the membership of the police jury grew out of the unwillingness of taxpayers to retain in office members who had not been sufficiently careful in entering into a contract of great local importance.

But be that as it may. If the witnesses for the plaintiff are to be believed, the contractor's work was excellent and all that the contractee had a right to expect. If the wit-

nesses for the defendant are to be believed, it is quite to the contrary, as we have already had occasion to state above.

After the police jury had failed to realize an amount to meet payment, as above stated, that body inquired of the contractor in regard to his intentions. His reply was that he was willing to continue with his work under his contract; that he would make no change and expected the cash as stipulated in the contract. Whereupon the police jury presented a written contract, drawn in accordance with the ordinance first above mentioned, containing all that the ordinance provided in regard to credit payment, and offered to deliver certificates to be met by amounts which the police jury had bound itself to provide in order to meet these certificates.

The contractor positively refused to sign this contract and reiterated that he would stand by the original contract. He stopped with the work and instituted this suit.

The defendant in its answer made averments for a sequestration and prayed for that writ to issue and for sequestration of the material, consisting of the débris of the old building, of which plaintiff had possession and part of which he had used.

In our opinion, the contract was null. It had not been drawn in accordance with any provision of law and gave the plaintiff no right of action as his contract had no validity; it never had any validity.

The police jury is a body having delegated powers to adopt ordinances. A record is kept of them. If legally adopted, they are binding and cannot be set aside by subordinate authority. It is not in the power of a building committee to set aside the plain expression of an ordinance, nor the president of the police jury.

The next question presented is whether the police jury could ratify this contract and estop itself.

The affirmative proposition in answer to the foregoing is not sustained by authority.

Above we said that the act of a private agent could not be binding upon his principal when the agent exceeded his authority.

The principal in a private contract who enters into a contract through an agent can ratify the act of his agent, but a police jury, whose powers are defined by the Legislature, has to follow the statutes. They are not free to act as in the case of private individuals. They cannot go beyond the scope of their authority by attempting to ratify that which originally had no existence. They cannot do indirectly that which they have not the authority to do directly.

In this instance, at the time, there remained one of two things to do; that was for the contractor to sign the contract drawn in accordance with the ordinance, or start anew.

The building of a courthouse may be paid from the estimated surplus of the parish revenues. The contract may be made on cash realized or to be realized from certificates.

This view was expressed in Murphy v. St. Mary, 118 La. 401, 42 South. 979; also in the Dupuy Case, 116 La. 785, 41 South. 91, and in Bienville Parish Case, 48 La. Ann. 333, 19 South. 282. Neither was done in this instance.

The contractor, according to the ordinance, was to receive the certificates themselves. It was different in the contract; only cash was the consideration. He (plaintiff) positively refused all the conditions of the ordinance. Without regard to surplus or parish revenues to be laid aside and other provisions to raise funds, the plaintiff insisted upon cash in direct violation of the provisions of law that no warrant shall be issued unless provision has been made to meet it by laying aside sufficient fund.

The contractor cannot be considered as a third person in matter of this contract.

He is not a third person under the law.

He must be charged with knowledge of the fact that the police jury had entered into a contract entirely beyond the scope of its authority.

It is well settled by repeated decisions that under the circumstances here the parish cannot be estopped and concluded.

It follows from the foregoing that plaintiff has acquired no right, either under the original contract or under the attempted ratification.

We extend our inquiry further.

This brings us to the demands of plaintiff for payment for particular items.

The first is for damages to his reputation.

Even if the contract had been entirely legal, there would have been scant ground to recover damages. The testimony is entirely too general. It does not appear in what respect he has been damaged in his reputation. It was a matter of difference of opinion between the parties, and a failure to follow the terms of an ordinance, such differences as may arise in matter of the execution of a contract.

If we were to conclude that there was liability, we do not find that it was by the parish, but by the individuals who had gone beyond the scope of their authority while officers of the parish.

As relates to profits (another claim of plaintiff), which plaintiff would have made had the cash been found in accordance with the contract, we will state that, had the contract been found legal, the amount claimed for this item is speculative and problematical. Beyond general asseverations, there is no evidence upon the subject such as required to sustain a judgment. A demand for a round sum cannot be granted unless it is shown by reference to facts that it is reasonably certain that plaintiff would have realized the amount he claims.

This was not done.

The third and last item was for work performed and materials furnished, including $1,000, which plaintiff has received on the contract.

We will state in the first place that the argument for the defendant brought up the subject of the new jail.

This is an independent contract and presents no issue before us to determine except as relates to the old material taken from the courthouse and used in building the jail. This was the property of the parish.

Of the material from the old courthouse, we have found items to the amount of $3,644. Also he must be charged with the $1,000 received by him. Amount allowed in reconventional demand, $4,644.

This plaintiff owes to the parish.

The movable property in the yard from the old courthouse remains the property of the defendant.

The law and the evidence being in favor of defendant and against plaintiff, the judgment of the district court is amended by reducing the amount allowed in the reconventional demand to $4,644, with interest on said amount as heretofore allowed on similar amount.

In all other respects, the judgment is affirmed.

The appellee to pay the costs of appeal.

MONROE, J., dissents.